Before the Third Division, April 23, 1941

**No. 45761.**—Protest 6024–K of Henry A. Wess, Inc. (Cleveland).

Evans, Judge:   This is an action against the United States wherein the importer seeks to recover certain sums of money claimed to have been illegally exacted by the erroneous conversion of the currency on an importation of merchandise that was exported from Basel, Switzerland, by way of Hamburg, Germany, and entered at the port of Cleveland, Ohio.

The collector of customs converted the currency as of the date of certification of the consular invoice at the rate certified to the Secretary of the Treasury by the Federal Reserve Bank of New York, as promulgated in T. D. 49720, for October 6, 1938, which gives the rate of exchange for the Swiss franc on that date to be $0.228038.   The importer claims that the conversion should have been made at the rate of $0.227808 as of the date of October 4, as published in the same Treasury decision.   It is the importer's contention that the collector should have accepted the following statements that appear on the face of the consular invoice as the date of exportation of the instant merchandise:

Forwarded on October 4, 1938 through Messrs. Gondrand Bros., Ltd., Basel, for shipment to Norwood (Ohio), via Hamburg and Norfolk (Va.) per S. S. "Liberty" sailing from Hamburg on the 11th inst.

and also a further statement concerning the market value which reads as follows:

The market value on October 4, 1938, the date of exportation of the goods covered by this invoice, corresponds in each case to the price invoiced herein.

The consular invoice was dated October 4 but the consular certificate was dated October 6, 1938.   We quote the following provisions of the Customs Regulations of 1937 which relate to the method of determining the date of exportation:

Art. 822. Conversion of currency.—

\*        \*        \*        \*        \*        \*        \*

(e) \* \* \*

(4) When the merchandise is shipped from an interior country through the ports of another country or from a country contiguous to the United States, the date of exportation shall be the date on which the merchandise crosses the border of the country of exportation and passes beyond the control of the government of such country.

(5) If the merchandise is not exported directly by water and no positive evidence is at hand as to the date of exportation, the date of the invoice certification shall be considered the date of exportation, unless the invoice appears to have been certified after the date the merchandise actually left the country of exportation; otherwise the date shown as the date the invoice was prepared shall be taken, unless it also appears to be later than the actual date of exportation.   In the absence of a certified invoice, the date of the pro forma invoice will be taken unless it appears to be dated after the actual date of export.   If a pro forma invoice covers several individual bills of different dates, the latest of such dates, unless it appears to be later than the actual date of export, will be taken.

(6) In. the case of indirect shipments exported from one country through another, if the invoice is post certified and post dated, the date of the bill of lading may be used in the absence of other evidence, if the bill of lading was issued in the country of export.

(7) The date of actual shipment may be taken when there is presented a bill of lading showing the date of shipment, provided such bill of lading has been certified in accordance with the provisions of section 2904 of the Revised Statutes.

In support of the plaintiff's theory he cites the case of United States v. Bloomingdale Bros. & Co., 10 Ct. Cust. Appls. 149, T. D. 38400, which holds, among other things, that "customs laws have always contemplated that invoices in due form made in accordance with statutory requirements and not discredited or impeached were, in the absence of other proof, admissible as some evidence of the facts stated therein, and that the administrative practice and the judicial tribunals have conformed to that interpretation." It must be borne in mind that in the Bloomingdale case the question there was as to the character of the merchandise, the thread count in the fabric, etc. The statement of the merchant concerning the character of the goods he exported would be in the nature of things a matter within his knowledge, it seems to the court. But it is not easy to understand how he could know the exact date his merchandise might cross the border of the country of exportation in its journey to destination. Aside from that fact the collector did not accept the statement as positive proof of the date of exportation and, since his action is presumptively correct, can the court now say, with no greater degree of evidence before it than the collector had before him, that he was wrong in refusing to accept the statements in question as positive proof of date of exportation?

In the Bloomingdale case the question involved was the identity of merchandise, and not an extraneous fact relating to the date merchandise passes the border of one country into another. In the case herein the statements on the invoices are not verified, except by an unsworn certificate which says, "and that all the statements contained herein and in such invoice are true and correct." In a court of law evidence is presented under oath. A declaration under oath would have constituted, of course, positive proof.

We do not feel justified in saying that the collector's action, taken in view of all the evidence now presented to the court, and, for all we know, possibly other evidence, should be set aside. Rather we deem it the duty of the court to indulge in the presumption that he acted within the law in this instance.

The protest will be overruled. It is so ordered.